UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JERRY L. OUSLEY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Case No. 4:09CV1957 HEA |
| NEW BEGINNINGS C-STAR, INC., | ) |  |
| Defendant. | ) |  |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 38]. Plaintiff opposes the Motion, and the issues are fully briefed. For the reasons set forth below, the Motion is granted.

## **Introduction**

Plaintiff initially filed this action *pro se*. He is now represented by counsel. Plaintiff's original complaint has been amended and is brought pursuant to the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq*.; the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 *et seq*.; and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Count I of Plaintiff's amended complaint alleges Defendant engaged in acts of discrimination due to Plaintiff's disability. Count II alleges that Defendant terminated Plaintiff's employment in retaliation for Plaintiff exercising his rights under § 12203 of the ADA; 42 U.S.C.

§ 1981;[1] and Mo. Rev. Stat. § 213.070.

Defendant now moves for summary judgment on three grounds. First, Defendant argues that Plaintiff cannot present any evidence of disability discrimination, and as such, the Court should enter summary judgment in its favor. Second, Defendant moves for summary judgment on Plaintiff's MHRA discrimination claim because Plaintiff failed to obtain a right-to-sue letter and exhaust his administrative remedies. Third, Defendant moves for summary judgment on Plaintiff's retaliation claims because Plaintiff's discrimination charge, which was filed with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Human Rights Commission ("MHRC"), alleged discrimination based on disability. As such, Defendant argues that Plaintiff failed to exhaust his administrative remedies.

**Facts and Background**

Defendant is a not-for-profit corporation located in St. Louis, Missouri. It provides counseling services to adults and adolescents who abuse alcohol or drugs. The St. Louis City Drug Court is one of Defendant's clients, and Defendant operates an on-site treatment facility at the courthouse. Defendant

---

[1] This opinion, memorandum, and order does not address the merits of Plaintiff's retaliation claim under 42 U.S.C. § 1981 because Defendant has filed a separate motion on this issue with the Court.

employed Plaintiff as a counselor for approximately nine years. Plaintiff and Defendant had an at-will employment relationship.

Defendant's employee handbook states that employees may be eligible for up to 12 weeks of Family Medical Leave Act ("FMLA") per year. Pursuant to the handbook, employees who request a leave of medical absence must also submit medical certification that verifies the employee's inability to work. Defendant's employee handbook also stipulates that employees may be required to submit a work release or fitness-for-duty certificate after a leave of medical absence and before returning to work.

In August 2003, Plaintiff had surgery on the anterior cruciate ligament in his right knee and took a medical leave of absence; he used FMLA leave. Plaintiff's medical leave began on September 11, 2003 and ended on January 15, 2004. Prior to returning to work, Plaintiff submitted a medical release to Defendant. Plaintiff's medical leave exceeded twelve weeks, and as such, he exhausted his FMLA leave in 2003.

Approximately five years later, Plaintiff took a second leave of medical absence because he was experiencing knee pain; he used FMLA leave. Plaintiff's medical leave began on September 22, 2008. Two physicians submitted medical certification on Plaintiff's behalf. Dr. Doris Tribune-Brown certified Plaintiff's

inability to work between September 19, 2008 and October 24, 2008. Orthopedic surgeon Dr. Kenneth W. Zehnder, M.D. certified Plaintiff's inability to work until his next office visit, which was scheduled for late November. On December 4, 2008, Plaintiff had an office visit with Dr. Tribune-Brown, and she prepared a second doctor's note for him. This note stated the following: Plaintiff was unable to perform his work activities; it was in his best interest to remain on medical leave until March 4, 2009; and he could return to work on a date "to be determined."

Around December 15, 2008, Plaintiff exhausted his FMLA leave. In a letter dated December 16, 2008, Defendant notified him of the following: Plaintiff had exhausted his FMLA leave, his medical and dental plan coverage would terminate on January 1, 2008, and he would be eligible for medical coverage through COBRA. After twelve weeks of medical leave, Plaintiff neither submitted a fitness-for-duty certificate nor a date by which he expected to return to work. In a letter dated January 26, 2009, Defendant terminated Plaintiff's employment "because of his inability to return to work in a timely manner." (Def's Answer to Pl.'s Interrog. 7(b)).

On May 18, 2009, Plaintiff filed a charge of discrimination against Defendant with the EEOC and the St. Louis Civil Rights Enforcement Agency

("CREA"). The charge of discrimination alleges a single claim: discrimination based on disability. Accordingly, an "x" appears in the box labeled "Disability." Plaintiff did not select any other boxes on the form, such as age, retaliation, or race. In the particulars section of the charge, Plaintiff states he worked for Defendant as a counselor and is diabetic. Plaintiff avers he was confused by Defendant's decision to terminate his employment because in 2003, Plaintiff took FMLA leave and was not terminated. Plaintiff also alleges that he was discharged because Defendant perceived him as disabled.

On June 29, 2009, the director of the CREA issued a determination on the merits of Plaintiff's discrimination charge. Plaintiff did not request a right-to-sue letter, and consequently, the CREA did not issue such a letter to him. The CREA forwarded its findings to the EEOC and the MHRC. On September 09, 2009, the EEOC sent Plaintiff a notice of dismissal and a right-to-sue letter.

## Discussion

### Summary Judgment Standard

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson* 477 U.S. at 256; *Littrell*, 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed. R. Civ. P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Wilson v. Int'l Bus. Mach. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotations omitted). *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003). A party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Assocs. v. Jung* 422 F.3d 630, 638 (8th Cir. 2005).

Summary judgment is proper if a plaintiff fails to establish any element of the prima facie case. *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 444 (8th Cir. 1998) (citing *Weber v. American Express Co.*, 994 F.2d 513, 515-16)). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-27(8th Cir. 2007). Summary judgment will be granted when, viewing the evidence in the light most favorable

to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kan. City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006).

## Discrimination under the ADA

Under the ADA, employers are prohibited from discriminating "against a qualified individual because of the disability of such individual." 42 U.S.C. § 12112(a). "In the absence of evidence of direct discrimination, we analyze ADA claims under the burden-shifting framework of *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-04 (1973)." *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007). To establish a *prima facie* case under the *McDonnell Douglas* framework, Plaintiff must demonstrate that: (1) his condition qualifies as a disability under the ADA; (2) he is qualified to perform the essential functions of his position with or without a reasonable accommodation; and (3) he has suffered an adverse employment action due to his disability. *Samuels*, 437 F.3d at 801 (citing *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 850 (8th Cir. 2002)).

## A. Disability under the ADA

In his amended complaint, Plaintiff alleges he was fired because of his

disability. For the purposes of this motion, the Court assumes, without deciding, that Plaintiff's condition qualifies as a disability under the ADA.

## B. Qualified Individual without a Reasonable Accommodation

The ADA provides that no employer "shall discriminate against a *qualified* individual with a disability." 42 U.S.C. § 12112(a) (emphasis added). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Id.* at § 12111(8). The determination of whether an employee is qualified requires a two-part inquiry. *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1047 (8th Cir. 1999). First, Plaintiff must demonstrate he possesses the "requisite skill, education, experience, and training for his position." *Id.* Second, Plaintiff must prove he is able to perform the essential job functions with or without a reasonable accommodation. *Id.* at 1048. "An ADA plaintiff may not rely on past performance alone to establish that []he is a qualified employee when the record clearly reflects diminished or deteriorated abilities." *Id.*

The parties agree that Plaintiff possesses the skill, education, and experience necessary for the position. Accordingly, the court directs it attention on Plaintiff's

burden to establish he is qualified to perform the essential functions of the job with or without a reasonable accommodation. Defendant contends that Plaintiff is not qualified because he "communicated his inability to work indefinitely." (Def.'s Mot. for Sum. J. 8).

In the context of the ADA, the Eighth Circuit has "'consistently held that regular and reliable attendance is a necessary element of most jobs.'" *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 469 (8th Cir. 2007); *Browning*, 178 F.3d at 1048 ("[I]t is axiomatic that in order for [an employee] to show that she could perform the essential functions of her job, she must show that she is at least able to show up for work."); *Moore v. Payless Shoe Source, Inc.*, 187 F.3d 845, 848 (8th Cir. 1999) ("An employee who is 'unable to work on a regular basis is unable to satisfy any of the functions of the job in question, much less the essential ones.'"); *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 444, 445 (8th Cir. 1998) ("We have recognized that attendance at work is a necessary job function.").

In light of the parties' interrogatories, it is reasonable to infer that Plaintiff's position as a counselor requires consistent and regular attendance. (Def.'s Answer to Pl.'s Interrog. 7(b)). Prior to his discharge, Plaintiff had not submitted a fitness-for-duty certificate. Further, Plaintiff failed to provide Defendant with a date by which he expected to return to work. In order for Plaintiff to show he could

perform the essential functions of the job, he "must show that []he is at least able to show up for work." *Browning*, 178 F.3d at 1048.  Therefore, under these facts, Plaintiff has failed to present any evidence that he can perform the essential job functions, namely regular attendance at work, without an accommodation.

**C. Qualified Individual with a Reasonable Accommodation**

Under the ADA, Plaintiff would still be a qualified individual if he could perform the essential functions of his job with a *reasonable* accommodation.  42 U.S.C. § 12111(8) (emphasis added).  Plaintiff claims he proposed the following accommodations: (1) an extended leave of medical absence and (2) a substitute counselor to fill his position during his absence.  Assuming Plaintiff proposed such accommodations, the court must determine whether these accommodations are reasonable.

The term "reasonable accommodation" has been defined as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed." 29 C.F.R. § 1630.2(o)(1)(ii).  Reasonable accommodations may include "[m]aking existing facilities used by employees readily accessible to and usable by individuals with disabilities; [j]ob restructuring; part-time or modified work schedules; [or]

reassignment to a vacant position." *Id.* at (o)(2)(i)-(ii). "There is no precise test for what constitutes a reasonable accommodation, but an accommodation is unreasonable if it 'either imposes undue financial or administrative burdens, or requires a fundamental alteration in the nature of the program.'" *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999) (citing *DeBord v. Bd. of Educ.*, 126 F.3d 1102, 1106 (8th Cir. 1997)).

The Eighth Circuit has held that "a request for an indefinite leave of absence . . . is not a reasonable accommodation under the ADA." *Peyton v. Fred's Store of Ark., Inc.*, 561 F.3d 900, 903 (8th Cir. 2009); *Buckles*, 176 F.3d at 1101 ("An employer is not required by the ADA . . . to provide an unlimited absentee policy."); *see also Kinnaman v. Ford Motor Co.*, 79 F. Supp. 2d. 1096, 1104 (E.D. Mo. 2000) ("[D]efendant is not required, under the ADA, to provide indefinite leaves of absences."); *Windsor v. Parkway Sch. Dist.*, No. 4:06 CV 1310 DDN, 2008 U.S. Dist. LEXIS 3176, at *20 (E.D. Mo. Jan. 15, 2008) ("[R]equests for a leave of absence of an indefinite duration are often found not [to] be a reasonable accommodation under the ADA, as a matter of law." ). Further, an indefinite leave of absence has been deemed unreasonable "because it does not enable a disabled person to work and the cost to any employer to pay both the absent worker and replacement worker to fill the same position for an indefinite period of time

constitutes an undue burden on the employer." *Kinnaman*, 79 F. Supp. 2d at 1104 (citing *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995)).

It is clear that "the more definite and immediate the return date, the more likely the request for additional leave will be reasonable[, and] [t]he less definite and immediate the return date, the less likely the request for additional leave will be reasonable." *Windsor*, No. 4:06 CV 1310 DDN, 2008 U.S. Dist. LEXIS 3176, at *23. Here, Defendant terminated Plaintiff's employment "because of his inability to return to work in a timely manner." (Def's Answer to Pl's Inter. 7(b)). Defendant also explained that "Plaintiff . . . provided no definite date from his treating physician for his estimated return to work." *Id.* Plaintiff's doctor's note confirms his inability to return to work in a timely manner; it states that Plaintiff can return to work on a date "to be determined." Without a definite or immediate return date, Plaintiff fails to present any evidence of the expected duration of his medical leave. As such, his request for additional leave is unreasonable. *See Altendorfer v. Kroll Ontract, Inc.*, No. 04-4822 (JNE/SRN), 2006 U.S. Dist. LEXIS 30418, at *11 (E.D. Minn. May 12, 2006) ("The . . . evidence demonstrates that, at the time of her termination, Altendorfer was both unable to work and unable to specify when she would be able to return. Even her doctor's . . . letter

failed to provide a definite return date. Under these circumstances, the Court concludes that a second extended leave would not have been a reasonable accommodation.").

Further, the Eighth Circuit has found that an employer "is not obligated to hire additional employees or [to] reassign existing workers to assist" another employee. *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir. 1998) (citing *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996) (finding that providing a helper to a disabled employee is not a reasonable accommodation). Similarly, the Seventh Circuit has held that "such a request [having another employee execute the tasks a disabled employee is unable to perform] is unreasonable because it requires another person to perform an essential function of [the] job." *Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002)*; Hansen v. Henderson*, 233 F.3d 521, 523-34 (7th Cir. 2000) (finding that an employer is not required to hire a helper as an accommodation to a disabled employee). Additionally, "Defendant's client, the St. Louis Drug Court, objected to the continued stop gap use of various temporary replacement counselors as substitutes for a consistent, regular counselor." (Def.'s Answer to Pl.'s Interrog. 7(b)). Defendant is not obligated to deny its client's legitimate, non-discriminatory request for a permanent counselor.

Because Plaintiff did not advance a reasonable accommodation, Plaintiff has failed to show he is qualified to perform the essential functions of the job with or without an accommodation. Accordingly, Plaintiff cannot establish a *prima facie* case of discrimination, and Defendant is entitled to summary judgment.

**D. Regarded as Disabled**

Alternatively, Plaintiff argues he is disabled within the meaning of the ADA and MHRA because he was "regarded as having such an impairment." 42 U.S.C. § 12102(1)(C). "An employer regards the employee as disabled when 'it mistakenly believe[s] that [the employee's] physical ailments substantially limit[] his ability to work.'" *Kozisek v. County of Seward, Neb.*, 539 F.3d 930, 935 (8th Cir. 2008). The "regarded as" provision of the ADA was designed to combat archaic attitudes and erroneous stereotypes that disadvantaged employees who were perceived as disabled. *Id.* "Accordingly, '[i]f a restriction is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled [employee] and does not establish a perception of disability." *Id.* Plaintiff's doctors' notes, which cite his inability to work, negate any claim that Defendant was operating under a mistaken belief that Plaintiff's knee injury substantially limited his ability to work. Plaintiff, therefore, fails to present a viable claim under the "regarded as" disability theory.

## Discrimination under the MHRA

Section 213.055 of the MHRA grants relief to those who can establish actionable violations for discrimination under the statute. Mo. Rev. Stat. § 213.055 (2011). "In order to sue under the MHRA, a potential plaintiff first must file a complaint with the MCHR. The potential plaintiff then must obtain a right-to-sue letter from the MCHR before filing suit." *Bonvicino v. Sec. Servs. of Am., L.L.C.*, No. 4:07CV78 JCH, 2007 U.S. Dist. LEXIS 28221, at *10 (E.D. Mo. April 17, 2007). "Obtaining a right-to-sue letter is a condition precedent to filing suit under the MHRA." *Id.* at *11; Stuart v. GMC., 217 F.3d 621, 630 (8th Cir. 2000) ("To initiate a claim under the MHRA a party must timely file an administrative complaint with the MCHR and either adjudicate the claim through the MCHR or obtain a right-to-sue letter."); *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994) ("Before initiating a civil action under the MHRA, a claimant must exhaust administrative remedies by timely filing an administrative complaint and either adjudicating the claim through the MCHR or obtaining a right-to-sue letter.").

Defendant asserts that Plaintiff's MHRA discrimination claim must be dismissed because he never received the requisite right-to-sue letter from the investigating agency. In a letter dated July 29, 2009, the CREA issued a finding of

no probable cause and sent a copy of its findings to Plaintiff. The CREA did not issue a right-to-sue letter because Plaintiff did not request such a letter. Under these circumstances, Plaintiff has not satisfied the condition precedent to filing suit under the MHRA, and his MHRA claim of discrimination must be dismissed without prejudice.

**Retaliation under the ADA and the MHRA**

In his amended complaint, Plaintiff avers his employment was terminated in retaliation for inquiring about the cancellation of his medical benefits. In response, Defendant argues that Plaintiff's retaliation claims under the ADA and MHRA must be dismissed because he failed to exhaust his administrative remedies. In the charge of discrimination, Plaintiff placed an "x" in the box labeled "Disability." The "Disability" box is the only box that contains an "x."

Parties alleging discrimination because of a protected status are not categorically precluded from asserting additional claims of discrimination that were not included in their charge of discrimination. A plaintiff "'may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Stuart*, 217 F.3d at 631 (quoting *Nichols v. Am. Nat'l Insur. Co.*, 154 F.3d 875, 886-87 (8th Cir. 1998); *Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998) (explaining that

a "'plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC.'"). This exception has been carved out because "[a]llowing a complaint to encompass allegations outside the ambit of the predicate . . . charge would circumscribe the EEOC's [and analogous state agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Wallin*, 153 F.3d at 688. Thus, Plaintiff's claim of retaliation will not be considered by this Court unless it grew out of his discrimination charge.

In the Eighth Circuit, "it is well established that retaliation claims are not reasonably related to underlying discrimination claims." *Id.*; *Russell v. TG Mo. Corp.*, 340 F.3d 735, 747 (8th Cir. 2003). Because Plaintiff failed to allege retaliation in his charge of discrimination, the court need not consider these claims; these claims have not been exhausted through the administrative process. Accordingly, Plaintiff's retaliation claims under the ADA and the MHRA are dismissed without prejudice.

## Conclusion

Pursuant to the *McDonnell-Douglas* framework, Plaintiff has failed to establish a *prima facie* case of discrimination. As such, Defendant is entitled to judgment as a matter of law on Plaintiff's discrimination claim under the ADA. Plaintiff has also failed to present any evidence that Defendant mistakenly regarded him as disabled. Defendant is therefore entitled summary judgment on this claim. Finally, Defendant is entitled to dismissal of Plaintiff's discrimination claim under the MHRA and Plaintiff's retaliation claims under the ADA and the MHRA because he failed to exhaust his administrative remedies. For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 38], is granted.

**IT IS FURTHER ORDERED** that Plaintiff's MHRA discrimination claim is dismissed without prejudice.

It is further ordered that Plaintiff's retaliation claims under the ADA and MHRA are dismissed without prejudice.

A separate judgment in accordance with this Opinion, Memorandum and

Order is entered this same date.

Dated this 14th day of October, 2011.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE